UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

BRIAN G. FEUER,

                  Defendant.

------------------------------------X

12 Cr. 836-01(RWS)

SENTENCING OPINION

**Sweet, D.J.**

On November 15, 2012, Brian G. Feuer ("Feuer" or "Defendant") appeared before the Honorable James C. Francis in the Southern District of New York and allocated to his criminal conduct as charged, in accordance with a written plea agreement. For the reasons set forth below, Feuer will be sentenced to 33 months' imprisonment to be followed by 2 years supervised release. Defendant will forfeit to the United States all property involved in the offense or traceable to it, pursuant to 18 U.S.C. § 981, 21 U.S.C. § 853, 28 U.S.C. § 2461, including but not limited to at least $1,739,731.86. Feuer will also be required to pay a special assessment of $100.

**Prior Proceedings**

One-count felony Information 12 CR 836-01 (RWS) was filed in the Southern District of New York. It charges that from September 2004 to April 2012, in the Southern District of New York and elsewhere, having devised a scheme to defraud, Feuer embezzled $1,739,731.86 from his employer by cashing fraudulent checks from his employer's bank accounts, which checks cleared by wire communications in interstate commerce.

The Information also charges that as a result of committing the wire fraud offense charged in Count 1, Feuer shall forfeit to the United States, real and personal property having a value of $1,739,731.86, representing the proceeds of the offense. The forfeitable property includes Feuer's title and interest in five properties located in Boca Raton, Florida, including 8864 Bella Vista Drive, 6275 Walk Circle, 656 S.W. 18th Avenue, 7193 San Sebastian Drive, and 6463 La Costa Drive, Apartment 205.

On November 15, 2012, Brian G. Feuer appeared before the Honorable James C. Francis, and allocuted to his criminal

2

conduct as charged, in accordance with a written plea agreement.

Feuer's sentencing is scheduled for April 11, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Feuer's personal and family history.

## The Offense Conduct

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Feuer was the director of finance at Pier Sixty LLC, a banquet and catering space located at Chelsea Piers in Manhattan, NY. In that position, Feuer was in charge of financial management at Pier Sixty, which generated approximately $30 million in revenues per year. From September 2004 through April 2012, Feuer embezzled $1,739,731.86 from Pier Sixty by writing checks to himself from Pier Sixty's checking account. Feuer was able to do this by changing the payee name in the accounting system, to which he had access as a result of his position at the company.

In mid-August 2012, Feuer's attorney contacted the U.S. Attorney's Office and indicated that Feuer wanted to voluntarily turn himself in and plead guilty to the fraud. At the time, Pier Sixty and its counsel, as well as the Manhattan District Attorney's Office, had been investigating Feuer. The U.S. Attorney's Office subsequently met with Feuer on a number

5

of occasions, and he admitted his misconduct.

In his plea allocution on November 15, 2012, Feuer stated: "On or about around September 4th 2001 through April 2002, while employed in Manhattan, I cashed fraudulent checks from my employer's bank accounts in the amount of $1,739,731.86 with the intention and knowledge that what I was doing was illegal. I knew that the wire transfers would cross state lines."

The Defendant was interviewed at the U.S. Probation Office in Manhattan, NY, on January 3, 2013, in the presence of his attorney, James M. Roth. Feuer stated the following, in sum and substance, regarding his criminal conduct:

> "It is the stupidest thing I've ever done in my life. It has affected my family and friends; my life will permanently change. I got caught up in a financial mess that I could not get out of. I was supporting many people and could not get out from underneath it. My plan was to borrow money to put my mother in a house, because she was becoming homeless. I was 'flipping' properties in Florida with a friend, and the properties were 'upside down.' I thought I could borrow the money and pay it back when the properties sold, and no one would be the wiser. I resigned in March 2012, when my boss started an investigation. I walked the Assistant U.S. Attorney through the crime, provided all the documents, and agreed to plead guilty."

**The Plea Agreement**

Pursuant to a written plea agreement dated October 22, 2012, Feuer and the U.S. Attorney's Office stipulated to the following:

a. The defendant hereby admits the forfeiture allegation with respect to Count 1 of the Information, and agrees to forfeit to the United States a sum of money equal to $1,739,731.86 in U.S. currency, representing the proceeds of the offense. The defendant further agrees to make restitution in the amount of $1,739,731.86 to Pier 60, LLC.

b. The applicable U.S. Sentencing Guidelines Manual is the 2011 edition.

c. The applicable Guideline provision for the offense is §2B1.1.

d. Pursuant to §2B1.1(a)(1), the base offense level is seven because the defendant was convicted of an offense referenced to this guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more.

e. Pursuant to §2B1.1(b)(1)(I), because the loss was more than $1,000,000 but not more than $2,500,000, the offense level is increased by 16 levels.

f. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction in the offense level will be warranted, pursuant to §§3E1.1(a) & (b).

7

g.  In accordance with the above, the applicable Guidelines offense level is 20.

h.  Based upon the information available to the U.S. Attorney's Office (including representations by the defense), the defendant has no prior criminal history. Accordingly, the defendant's Criminal History Category is I.

i.  Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 33 to 41 months' imprisonment. The applicable fine range is $7,500 to $75,000.

j.  The parties agree that either party may seek a sentence outside of the stipulated Guidelines range based upon the factors to be considered in imposing a sentence pursuant to 18 USC 3553(a).

**The Relevant Statutory Provisions**

The maximum term of imprisonment is 30 years, pursuant to 18 U.S.C. § 1343.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1).

The defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to 18 U.S.C. § 3561(a)(1).

The maximum fine is $1,000,000, pursuant to 18 USC 1343.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Full restitution to the victim is required under 18 U.S.C. § 3663A and 18 U.S.C. § 3664. Restitution in the amount of $1,739,731.86 is outstanding, and may be forwarded to the Clerk, U.S. District Court, 500 Pearl Street, New York, NY, 10007, for disbursement to Pier Sixty, LLC. Complete information as to where restitution payments may be directed to the corporation is awaited from the Government.

**The Guidelines**

The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for a violation of this type is found in §2B1.1, which provides for a base offense level of seven, pursuant to §2B1.1(a)(1).

Because the loss amount is $1,739,731.86, a 16-level increase is warranted, pursuant to §2B1.1(b)(1)(I).

Based upon his plea of guilty as well as statements during the presentence interview, Feuer has demonstrated recognition of responsibility for the offense. Pursuant to §3E1.1(a), the offense level is reduced by two levels. Further, as a result of the defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the abovementioned base offense level is 16 or greater, pursuant to §3E1.1(a) and (b), the offense level is reduced by three levels.

Accordingly, the total offense level is 20.

The total of the criminal history points is zero. According to the sentencing table at Chapter 5, Part A, zero criminal history points establish a Criminal History Category of I.

Based on a total offense level of 20 and a Criminal History Category of I, the guideline range for imprisonment is 33 to 41 months.

The guideline range for a term of supervised release is at least two years but not more than five years, pursuant to §5D1.2(a)(1). The Court shall order a term of supervised release when required by statute (§5D1.1(a)(1)), when a term of imprisonment of more than one year is imposed (§5D1.1(a)(2)). The Court may order a term of supervised release, pursuant to §5D1.1(b).

The defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to §5B1.1(b)(1).

Because the applicable guideline range is in Zone D of the Sentencing Table, the defendant is not eligible for probation, pursuant to §5B1.1, application note #2.

The fine range for the instant offense is from $7,500 to $1,000,000, pursuant to §5E1.2(c)(3)(A) and (c)(4).

Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,407.78 to be used for imprisonment, a monthly cost of $286.11 for supervision, and a monthly cost of $2,180.27 for community confinement.

Pursuant to §5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is authorized under 18 USC 3663A.

**The Sentence**

For the instant offense, Feuer will be sentenced to 33 months' imprisonment and 2 years' supervised release.

Feuer is directed to report to the nearest United States Probation Office within seventy-two hours of release to

commence his term of supervised release. It is recommended that Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, Defendant shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The defendant shall provide the probation officer with access to any requested financial information.

(2) The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

The defendant shall forfeit his interest in the following property to the United States:

Real and personal property having a value of $1,739,731.86, including Feuer's title and interest in five properties located in Boca Raton, Florida, including 8864 Bella Vista Drive, 6275 Walk Circle, 656 S.W. 18th Avenue, 7193 San Sebastian Drive, and 6463 La Costa Drive, Apartment 205. It is further ordered that the defendant make restitution payable to the Clerk, U.S. District Court, 500 Pearl Street, New York, NY 10007, for disbursement to Pier Sixty, LLC, in the amount of $1,739,731.86. The factors in 18 USC 3664(f)(2) were considered in formulating the payment schedule.

The restitution shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 11, 2013.

It is so ordered.

**New York, NY**
**April 8, 2013**

ROBERT W. SWEET
U.S.D.J.